## Tradesmen's National Bank, Appellant, *v.* Indiana Bicycle Co.

*Contract—Agreement not to levy—Estoppel.*

Where some of the goods of an insolvent debtor are sold at sheriff's sale and bought in by certain of his creditors who form a company to resell them, and the president of the new company agrees that other goods of the debtor pledged to another creditor shall be stored in the new company's store, and shall not be levied upon, another creditor corporation of which the president of the new company is also president, cannot levy upon such goods so as to defeat the rights of the creditor to whom they were pledged.

Argued Jan. 9, 1895. Appeal, No. 448, Jan. T., 1894, by plaintiff, from judgment of C. P. No. 4, June T., 1892, No. 452, refusing to take off nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Sheriff's interpleader.

At the trial it appeared that on September 19, 1891, T. Henry Streeting gave to the Tradesmen's National Bank the following storage receipt:

"WAREHOUSE RECEIPT.

"SWEETING'S STORAGE WAREHOUSE,

"815 *Arch Street.*

T. W. S.  4, 28, 92.

"PHILADELPHIA, September 19th, 1891.

"*Received* from Tradesmen's National Bank the merchandise described below, to be held on monthly storage from date hereof and to be delivered on the order of Tradesmen's National Bank only on return of this certificate and payment of the charges.

| MARKS, ETC. | DESCRIPTION OF MERCHANDISE. |
|---|---|
| Various. | Bicycles and bicycle supplies, of a cash cost value of three thousand five hundred dollars ($3,500). |

T. HENRY SWEETING.

Storage per month, 1 c.

Labor,  .  .  1 c.

Insurance,  .  $3,500 under our general policies.

## INDORSED.

"Warehouse receipt. Sweeting's Storage Warehouse, 815 Arch street. T. W. S. 4, 28, 92. Philadelphia, September 19, 1891. Merchandise. Tradesmen's National Bank, Philadelphia. Please deliver the within merchandise upon payment of all charges. Obligations of warehousemen and storekeepers, an act relating to goods, wares, and merchandise in store and in transit, and to make receipts and bills of lading therefor negotiable, approved March 28, 1870, followed by sections 1, 2, 3, 4, 5, and 7 of said act."

Sweeting gave the receipt to the bank as collateral security for an obligation of suretyship which the bank entered into for him. He subsequently borrowed money from the bank, and authorized the bank to hold the receipt as part collateral for the loan. No particular bicycles or goods seemed to have been set aside for the purposes of the receipt. Shortly after issuing the receipt Sweeting removed his bicycle depot from 639 Arch street to 815 Arch street, and at the latter place no warehouse business whatever was conducted by him.

In July, 1892, Sweeting failed and was closed out by the sheriff. After the sale a number of execution creditors who were purchasers, formed what was known as the Phœnix Cycle Company, Limited, under the act of June 2, 1874, and employed Mr. Sweeting as manager, the business being conducted at Mr. Sweeting's former place of business. The lease of the building continued in the name of Sweeting, the new company paying the rental.

Sweeting did not notify the bank that the goods covered by their receipt had been levied upon, but after the levy had been made he told Mr. Smith (who was not only chairman of the new Phœnix Cycle Company, but also president of the Indiana Bicycle Company, the present defendant, and a large creditor of Sweeting) that he had other liabilities, and that this warehouse receipt was outstanding, and asked permission to bring into the store of the Phœnix Cycle Company certain bicycles and bicycle supplies which he had in other places to meet this obligation. Mr. Smith replied, "As a creditor I will not interfere with those." Sweeting then began to bring into the store bicycles and bicycle supplies. Before, however, he had gotten in goods to an amount large enough to meet this warehouse

receipt, Mr. Smith, on behalf of his company, the Indiana Bicycle Company, issued an alias fi. fa., and levied upon them. The bank was then notified of this levy, and at once claimed the goods under their warehouse receipt. Interpleader proceedings were then taken between the bank and the Indiana Bicycle Company, and upon the first trial of the issue a verdict was rendered in favor of the bank. A new trial was, however, granted, and upon the second trial a nonsuit was directed by the court.

*Error assigned* was refusal to take off nonsuit.

*Charles Biddle, Wm. Rudolph Smith*, with him, for appellant. —Sweeting could not deny his own receipt, and his declaration could not defeat the claim of the plaintiffs in this proceeding: Widdall v. Garsed, 125 Pa. 358; Brooks, Miller & Co. v. Bank, 16 W. N. C. 298.

If it is true that the promise made by the defendant company through their president not to touch these bicycles was made without consideration and could not be enforced as a contract, it nevertheless should have been submitted to the jury whether it did not put the defendant company upon notice: Stephens v. Gifford, 137 Pa. 228; Rohland v. Rooke, 127 Pa. 139; 2 Bigelow on Fraud, 339; M'Bride v. McClelland, 6 W. & S. 94; Buckley v. Duff & Son, 114 Pa. 602; Garrettson v. Hackenburg, 144 Pa. 113; Crawford v. David, 99 Pa. 579; Smith v. Crisman, 91 Pa. 428; Clow v. Woods, 5 S. & R. 275; Craig's Ap., 77 Pa. 448; McKibbin v. Martin, 64 Pa. 352; Evans v. Scott, 89 Pa. 136; Renninger v. Spatz, 128 Pa. 524.

If we consider Sweeting in the light of a bailee, he comes within those cases where it has been decided a sale is good against creditors within delivery of possession, a symbolic delivery being all that is required, for the reason that the change of title does not leave in the bailee apparent ownership of the goods: Linton v. Butz, 7 Pa. 89; Woods v. Hull, 81 Pa. 452; Stephens v. Gifford, 137 Pa. 232; Janney v. Howard, 150 Pa. 340.

*J. Martin Rommel*, for appellee, cited: Stephens v. Gifford, 137 Pa. 228.

OPINION BY MR. JUSTICE MITCHELL, March 11, 1895:

It must be conceded that the storage receipt was not, under the evidence, such a warehouse receipt as gave the plaintiff a complete title which could be asserted generally against a creditor levying on the goods. But this case depends on entirely different principles. The goods came within the grasp of the defendants in reliance on their promise not to levy upon them. As between the defendants and Sweeting their judgment debtor this promise might be unavailing for want of consideration, his goods wherever found being answerable for their debt. But plaintiff had an equity in them, and if they had been delivered to it by Sweeting the bank would have had a valid lien on them which would have been good against defendants and all others. The goods were the property of Sweeting and were out of the reach, for the time at least, of the defendants, for they were held by other parties on consignments by Sweeting. The latter says distinctly in his testimony that he informed Mr. Smith, the president of defendant company, that he had these goods out on consignment and he would like to have them, to meet his other liabilities, " to provide for the payment of the bank, or the meeting of this warehouse receipt, and Mr. Smith said he would not interfere with those things." Relying on this promise Sweeting brought the goods to the defendant's place and stored them there. It is a fair presumption that except for this promise Sweeting would have turned the goods over to the actual custody of the bank, which would have made its title good against everybody. But even without this presumption, the goods were brought to the defendant's knowledge and within their grasp, with notice that they were pledged to the bank and in reliance on the promise not to interfere with them. As against the bank, defendants are estopped from denying the sufficiency of the setting apart to the bank, and the validity of its title. To allow them to do so would be to allow them to profit by a breach of good faith to the prejudice of the plaintiff.

Judgment reversed and procedendo awarded.