## Tradesmen's National Bank *v.* Indiana Bicycle Company, Appellant.

*Contract—Estoppel—Agreement not to levy on pledged goods.*

Where some of the goods of an insolvent debtor are sold at sheriff's sale and bought in by certain of his creditors who form a company to resell them, and the president of the new company agrees that other goods of the debtor pledged to another creditor shall be stored in the new company's store, and shall not be levied upon, another creditor corporation of which the president of the new company is also president, cannot levy upon such goods so as to defeat the rights of the creditor to whom they were pledged.

Argued Jan. 20, 1896. Appeal, No. 184, July T., 1895, by defendant, from judgment of C. P. No. 4, Philadelphia County, June T., 1892, No. 452, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Sheriff's interpleader. Before THAYER, P. J.

The facts are stated in the previous report of this case, 166 Pa. 554.

The court charged as follows :

Upon the question of possession of the bicycles the evidence on this trial is substantially what it was before, and I may say, in the language of the Supreme Court when this case was before it, that "it must be conceded that the storage receipt was not, under the evidence, such a warehouse receipt as gave the plaintiff a title which could be asserted generally against a creditor levying on the goods." That is the language of the Supreme Court, and it is as true now as it was then. The difficulty about the warehouse receipt was that no possession of the goods was ever delivered to the Tradesmen's Bank or to anybody for it, and an attempted transfer of title to personal property unaccompanied by possession is void and must always fail as against creditors. Therefore, there being no title under the so-called warehouse receipt on account of there never having been any possession delivered to the Tradesmen's Bank, the only question is whether the plaintiff, upon any other ground, is entitled to a verdict.

[It is said that there was a conversation between Mr. Sweeting and Mr. Smith, the president of the Indiana Bicycle Co., in which, according to Mr. Sweeting, he told Mr. Smith that he had certain other bicycles which were out on consignment; that he wanted to bring them in to provide for the Tradesmen's National Bank out of these bicycles, and to that Mr. Smith, the president of the Indiana Bicycle Co., said that he had no objection to that and would not interfere with it. If that is so, then, according to the law as it is laid down by the Supreme Court, when this case was there before, the Indiana Bicycle Co. would be estopped from levying on these goods after they had promised Mr. Sweeting in effect that they would not do so; in other words, that he might bring them in to apply to other creditors without any fear of their interference with his doing so. If you find that, therefore, you may, in accordance with what the Supreme Court lays down as the law, in this case, find a verdict for the plaintiff.] [1]

This statement of Mr. Sweeting is peremptorily contradicted by Mr. Smith, the president of the Indiana Bicycle Co. Mr. Charles F. Smith, who is the president of the Indiana Bicycle Co., which is the defendant in this case, testifies that he did have a conversation with Mr. Sweeting, but it related to no bicycles whatever, except to a certain lot which were in bond, and that he did say as regarding that lot of bicycles that he would like to take care of the other creditors, the Tradesmen's National Bank and others, with those bicycles, but that this conversation had no reference to any other bicycles at all. The present controversy concerns not the bicycles which were in bond at all. The bicycles which were in bond are not in this issue. Therefore the bicycles that are the subject of controversy here are those which are alleged to have been brought in from various agents throughout the country by Mr. Sweeting, to which agents they had been sent on consignment for sale for him, and which were deposited in the place where these bicycles were kept. That is the subject of controversy in this case. Mr. Sweeting says that his conversation had reference to those bicycles which he had out on consignment and were brought in. Mr. Smith denies that positively and says they had no reference whatever to bicycles that he had out on consignment and which are the subject of the present controversy, which were brought

in by Mr. Sweeting, but that the conversation related exclusively and solely to the lot of bicycles which had been in the bonded warehouse and put there as security for the Tradesmen's Bank and for Brown Bros. & Co. If that is so, the question as to the agreement not to levy on them is not in the case at all. If it is not in the case, you are to find a verdict for the defendant.

The evidence is uncontradicted that the bicycles in controversy do not relate to the bicycles in the bonded warehouse, but to the bicycles said to have been brought in from the consignees. [If you find that the agreement was as Mr. Sweeting says it was, you are to find a verdict for the plaintiff.] [2] If you find that the agreement was what Mr. Smith says it was, you will find a verdict for the defendant.

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–2) above instructions, quoting them.

*J. Martin Rommel*, for appellant, cited, McKnight v. Bell, 135 Pa. 358; Rhoads v. Heffner, 1 Walker, 377.

*Charles Biddle* and *Wm. R. Smith*, for appellee.

PER CURIAM, January 27, 1896:

On the retrial of this case in the court below, it appears to have been fairly submitted to the jury in accordance with the views of this court expressed in the opinion of our Brother MITCHELL reported in 166 Pa. 554. There is nothing in either of the specifications of error that requires discussion.

They are both dismissed.

Judgment affirmed.